**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RUTH'S CHRIS STEAK HOUSE**
**FRANCHISE, INC.,**

            **Plaintiff,**

**-vs-**                                                        **Case No. 6:10-cv-456-Orl-28DAB**

**T-FAB, INC., and MARCEL TAYLOR,**

            **Defendants.**
_____

# ORDER

This case involves a franchise dispute between Ruth's Chris Steak House Franchise, Inc. ("Plaintiff") and franchisees T-Fab, Inc. ("T-Fab") and Marcel Taylor ("Taylor") (collectively "Defendants"). In the Complaint (Doc. 1), Plaintiff alleges, inter alia, breach of contract and violations of the Lanham Act, 15 U.S.C. § 1051 et seq.

The case is currently before the Court on Defendants' Motion to Dismiss Under Rule 12(b)(2) (Doc. 21), in which Defendants assert that this Court lacks personal jurisdiction over them. Having considered the motion, Plaintiff's Response (Doc. 23) thereto, and Defendants' Reply (Doc. 27), I conclude that the motion must be denied because Defendants are subject to personal jurisdiction under Florida law and such exercise does not offend the Due Process Clause of the U.S. Constitution.

Plaintiff is a Louisiana corporation with its principal place of business in Heathrow, Florida. Defendant T-Fab is a Nevada corporation with its principal place of business in Las

Vegas, Nevada, and Defendant Taylor is a citizen of the state of Nevada.[1]  This Court has subject matter jurisdiction over this case based on both the presence of a federal question, 28 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332.

Where, as here, subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process[2] or on diversity of citizenship, a federal court may exercise personal jurisdiction over non-resident defendants only if such exercise is authorized by both the law of the forum state and the U.S. Constitution.  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (diversity); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1996) (silent federal statute). Typically, this Court examines the issue of personal jurisdiction under Florida's general long-arm statute—section 48.193, Florida Statutes.  However, this case presents an issue regarding contractual submission to personal jurisdiction; the basis of personal jurisdiction that is alleged in the Complaint is that "the defendants have consented to personal jurisdiction and venue in this district," (Compl. at 3).

"[I]f certain requirements are met, parties may, by contract alone, confer personal jurisdiction on the courts of Florida." Jetbroadband WV, LLC v. Mastec N. Am., Inc., 13 So. 3d 159, 162 (Fla. 3d DCA 2009).  Such contractual conferring of personal jurisdiction is provided for by section 685.102, Florida Statutes, which provides in pertinent part:

---

[1] The Defendants operated three franchises—two in Nevada and one in Colorado.

[2] As several courts have noted, "[t]he Lanham Act does not authorize nationwide service of process." be2 LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011); Hartoy Inc. v. Thompson, No. 02-80454-CIV, 2003 WL 21468079, at *1 n.2 (S.D. Fla. Jan. 29, 2003).

-2-

> [A]ny person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to [section 685.101, Florida Statutes,] and which contains a provision by which such person or other entity arising or located outside this state agrees to submit to the jurisdiction of the courts of this state.

§ 685.102(1), Fla. Stat.[3]

When Defendants first became franchisees of Plaintiff in 1989, Plaintiff was based in Louisiana, and it is undisputed that the initial franchise agreements did not contain a provision in which Defendants submitted to the jurisdiction of courts located in Florida. However, shortly after Hurricane Katrina struck in 2005, Plaintiff relocated to Florida, and on June 12, 2009—after issues with Defendants' franchises had emerged and in the course of trying to resolve their disputes—Plaintiff and Defendants signed a Workout and Mutual Termination Agreement ("the Workout Agreement") that included the following provisions:

> A. This Agreement and any claim or controversy arising out of, or relating to, the rights and obligations of the parties under this Agreement shall be governed by and construed in accordance with the laws of the State of

---

[3]Section 685.101 provides in part:

> The parties to any contract, agreement, or undertaking, contingent or otherwise, in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value, . . . may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract, agreement, or undertaking, the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract, agreement, or undertaking bears any relation to this state.

§ 685.101(1), Fla. Stat.

>    Florida, without regard to conflicts of laws principles.
>
>    B.  [Plaintiff] and [Defendants] agree that, to the extent any disputes cannot be resolved directly between them, [Defendants] shall file any suit against [Plaintiff] only in the federal or state court having jurisdiction where [Plaintiff's] principal offices are located at the time suit is filed.  [Plaintiff] may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed; where [Defendants] reside[] or do[] business; where the Restaurants are or were located; or where the claim arose.  [Plaintiff] and [Defendants] consent to the personal jurisdiction and venue of those courts over them.

(Workout Agreement, Ex. 7 to Compl., at 4).

Defendants argue that these provisions do not satisfy the requirements for contractual consent to jurisdiction under section 685.102(1), but these portions of the Workout Agreement indeed meet the conditions of the statute.  First, although Defendants assert that this case does not "arise out of or relate to" the Workout Agreement but instead arises from the franchise agreements themselves, this lawsuit clearly at least "relates to" the Workout Agreement.  The Workout Agreement is mentioned several times in the Complaint, and I am satisfied that this suit is sufficiently "related to" the Workout Agreement to meet the requirements of section 685.102(1).

Defendants also assert that they have not specifically consented to the jurisdiction of courts in Florida as required by section 685.102 but instead have consented only vaguely to "the jurisdiction where [Plaintiff's] principal offices are located at the time suit is filed," which they aver is not sufficient to satisfy the statute.  (See Doc. 27 at 2 (quoting the Workout Agreement)).  This contention is without merit.  In light of the fact that Plaintiff's principal offices are located in Florida, Defendants' consent to jurisdiction of federal and state courts where Plaintiff's principal offices are located is sufficient to establish consent to

jurisdiction of courts in Florida as required by section 685.102. Cf. Jackson Hewitt, Inc. v. Joiner's Tax Grp., Inc., No. 2:11-cv-00664 (DMC)(JAD), 2011 WL 2436673, at *2 & n.1 (D.N.J. June 13, 2011) (construing franchise agreement's provision stating that franchisee consented "to venue and personal jurisdiction . . . [in] the United States District Court nearest to [franchisor's] principal place of business" as meaning that "the District Court of New Jersey" was the selected forum for adjudication of disputes). Moreover, considering that the location of Plaintiff's offices was known by Defendants to be in Florida at the time the Workout Agreement was signed and that the location has not changed since then, it is no injustice or surprise to Defendants to require them to defend this suit in Florida.

Finally, Defendants contend that due process would not be satisfied if a court in Florida exercises jurisdiction over them, but this contention also is rejected. In a commercial setting such as this one, where a defendant gives express consent to personal jurisdiction in a freely negotiated agreement and the provision is not "'unreasonable and unjust,'" enforcement of such consent provisions "does not offend due process." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 14 (1972)); accord Jetbroadband, 13 So. 3d at 163 ("Normally, courts review a number of factors to determine whether minimum contacts exist. However, in the commercial context, the Supreme Court has held that the minimum contacts standard is met if a forum-selection clause exists that is freely negotiated and is not unreasonable and unjust." (internal quotation and citation omitted)).[4] No evidence has been presented that the

---

[4]I also agree with Plaintiff's contention that exercise of personal jurisdiction over Defendants is proper under Florida's general long-arm statute and traditional due process

provision at issue was not freely negotiated; moreover, it is not unreasonable or unjust.

Plaintiff relocated to Florida in 2005, and Defendants were aware of that relocation from the outset.  Indeed, although the original franchise agreements required payments to be sent to Louisiana, since its relocation to Florida Plaintiff has required its franchisees—including Defendants—to remit their contractual franchise payments to Florida. Furthermore, Defendants renewed at least one of their three franchise agreements in 2008—after Plaintiff had relocated.  Thus, although the franchise relationship began while Plaintiff was in Louisiana, since 2005 the relationship has clearly involved not Louisiana but Florida.  There is nothing unreasonable or unjust about the consensual jurisdiction provision, and accordingly it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss Under Rule 12(b)(2) (Doc. 21) is **DENIED**.[5]

---

analysis as well.  Section 48.193(1)(g), Florida Statutes, is satisfied because Defendants allegedly "[b]reach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state" when they did not make payments due in this state. Although the contracts initially called for payments to be made to Louisiana, since Plaintiff relocated it has required its franchisees to send payments to Florida.  Prior to their alleged defaults, Defendants did so.

Moreover, with regard to the "minimum contacts" and "fair play and substantial justice" aspects of traditional due process analysis, this case is factually similar to Burger King, in which the Supreme Court found that a Michigan franchisee could be haled into court in Florida without violating the Constitution.  The fact that Plaintiff originally was based in Louisiana does not materially alter the analysis, and just as the Michigan franchisee in Burger King availed himself of a continuing relationship and obligations with a Florida franchisor, so too have Defendants availed themselves—since 2005—of a continuing relationship with the Florida-based Plaintiff here.

[5] In light of this ruling, the Court need not address Plaintiff's argument that Defendants waived their objection to personal jurisdiction by failing to timely raise it.

**DONE** and **ORDERED** in Orlando, Florida this 5th day of October, 2011.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record