**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RUTH'S CHRIS STEAK HOUSE**
**FRANCHISE, INC.,**

           **Plaintiff,**

**-vs-**                                                     **Case No. 6:10-cv-456-Orl-28DAB**

**T-FAB, INC., and MARCEL TAYLOR,**

           **Defendants.**
_____

# ORDER

This case is before the Court on the Motion for Partial Summary Judgment (Doc. 18) filed by Ruth's Chris Steak House Franchise, Inc. ("Plaintiff"). As set forth below, the motion is granted.

## I. Background

The facts are not in dispute. Plaintiff is the franchisor of the Ruth's Chris Steak House restaurant chain. In July 1989, Plaintiff entered into a franchise agreement with Defendants, T-Fab, Inc. ("T-Fab") and Marcel Taylor ("Taylor") (collectively "Defendants") pursuant to which Defendants were to operate a Ruth's Chris Steak House franchise on Paradise Road in Las Vegas, Nevada. These parties later entered into franchise agreements for two other restaurants—one in Colorado and one on Flamingo Road in Las Vegas—but only the Paradise Road franchise is at issue in the motion for summary judgment that is now before the Court.

The Paradise Road franchise agreement was for an initial term of ten years, with

options to renew for three additional ten-year periods. (Franchise Agreement, Ex. 1 to Robert Vincent Decl., at 3). Defendants exercised their options to renew in 1999 and 2009, and thus the agreement was extended for two additional ten-year terms. On April 16, 2009, however, Plaintiff sent a Notice of Default to Defendants regarding the Paradise Road franchise, citing Defendants' failure to pay fees as required by the franchise agreement.[1] (Ex. 2 to Vincent Decl.). The Notice of Default stated in part that "failure to take timely action to cure the defaults as set forth herein shall result in the Franchisor taking action as granted in the Franchise Agreement including termination thereof." (Id.).

After the Notice of Default, "the parties engaged in discussions to attempt to resolve the defendants' arrearages." (Vincent Decl. ¶ 14). In June 2009, the parties negotiated a Workout and Mutual Termination Agreement ("Workout Agreement") that, among other things, extended the cure period for the Paradise Road franchise to June 30, 2009. (Ex. 3 to Vincent Decl.). The cure period was later extended to July 31, 2009, (Vincent Decl. ¶ 14.a.), but on September 8, 2009, Plaintiff sent Defendants a Notice of Termination regarding the Paradise Road location that stated that it was "being sent as formal notice that, due to the failure by [Defendants] to comply with the . . . [Paradise Road] Franchise Agreement, that Agreement is terminated in accordance with its provisions." (Ex. 4 to Vincent Decl.).

However, as explained by Plaintiff's Vice-President, Robert Vincent, "[a]fter the Notice

---

[1] Paragraph 6.01(b) of the franchise agreement required Defendants to remit to Plaintiff a royalty and service fee equal to 5½% of gross sales on or before the fifteenth day of each month.

of Termination of the Paradise Road Agreement was sent, the parties continued to attempt to reach a resolution that would permit [Defendants] to continue to operate a Ruth's Chris Steak House at that location." (Vincent Decl. ¶ 18). For example, by letter dated September 24, 2009, counsel for Defendants requested that Plaintiff work with Defendants regarding outstanding issues. (See Ex. A-1 to Taylor Decl. (September 30 Letter referring to the September 24 Letter)). Plaintiff responded in a September 30 letter by stating that "[f]or the Paradise Road Restaurant, [Plaintiff] is willing to for[]bear enforcing the termination of the Franchise Agreement and permit [Defendants] to continue operating that Restaurant as a Ruth's Chris Restaurant; provided that [Defendants] agree to and timely undertake [several enumerated] actions." (Id.).

On October 6, 2009, Taylor, on behalf of both Defendants, sent a letter to Plaintiffs that stated in part: "I am writing to respond to your proposed September 30, 2009 Letter Agreement . . . proposing an arrangement pursuant to which I would be allowed to continue to operate my Paradise Road Ruth's Chris franchise . . . . While the precise proposed Letter Agreement you sent is not one that I could financially do (and, accordingly, I do not want to create false expectations on the part of anyone by now committing to do it), I do want to work with Ruth's Chris in a way that works for all of us." (October 6 Letter, part of Ex. A-2 to Taylor Decl.). Taylor further stated that he "appreciate[d] Ruth's Chris'[s] willingness to forbear the termination" and he was "hopeful that Ruth's Chris [would] allow reasonable modifications to [it]s proposal." (Id.). Taylor then agreed to some, but not all, of Plaintiff's proposal. (Id.).

On December 1, 2009, Plaintiff sent, via email, a revised proposed Letter Agreement

to Defendants. (See December 7, 2009 Letter, part of Ex. A-2 to Taylor Decl. (referring to the December 1, 2009 emailed revised proposed Letter Agreement)). On December 7, Taylor, through an attorney, requested until December 11 to respond and noted that "to get to a final, mutually acceptable Letter Agreement, both Ruth's Chris and Marcel Taylor need to have in mind what is possible, on a going-forward basis." (Id.).

On December 11, Taylor sent a letter that he characterized as his "proposed Letter Agreement" in an effort "to come to a Letter Agreement that makes sense for Ruth's Chris and for" him. (December 11, 2009 Letter, part of Ex. A-2 to Taylor Decl.). In that letter, Taylor again expressed his "appreciat[ion for] Ruth's Chris['s] willingness to for[]bear the termination" and was "hopeful that this proposed Letter Agreement [would] be acceptable to" Plaintiff. (Id.).

From October 2009 through February 10, 2010, Defendants paid monthly royalties to Plaintiff. (Vincent Decl. ¶15; Taylor Decl. ¶ 12). Despite these payments and the parties' attempts to reach a resolution, "the parties were unable to reach an agreement," (Vincent Decl. ¶ 18), and on February 22, 2010, Plaintiff sent a Cease and Desist Notice that stated in part:

> By Notice of Termination dated September 8, 2009, [Plaintiff] terminated the [Paradise Road] Franchise agreement based upon your failure to pay certain continuing fees due to [Plaintiff]. Since your receipt of that Notice, [Plaintiff] has expended considerable time and resources working with you to reach an amicable resolution with regard to your defaults. To date, [Plaintiff] and you have not agreed to such a resolution.
>
> [Plaintiff] demanded that, by no later than February 19, 2010, you cease operating the Restaurant as a Ruth's Chris Restaurant, cease use of [Plaintiff's] Proprietary Marks, de-identify the Restaurant and otherwise comply with all of the post-termination obligations as set forth in the terminated

> Franchise Agreement. Despite your express contractual obligations to undertake these actions, you are continuing to operate the Restaurant as if it were still a franchised Ruth's Chris Restaurant, to use [Plaintiff's] Proprietary Marks and to offer the same products and services as those offered by franchised Ruth's Chris Restaurants. In the absence of your voluntary compliance with your legal obligations, Ruth's Chris will pursue its legal rights to enforce your post-termination obligations.

(Ex. 5 to Vincent Decl.). Plaintiff demanded in the Cease and Desist Notice that "[b]y no later than March 3, 2010 . . . [Defendants] cease all use of [Plaintiff's] Proprietary Marks and comply with all other post-termination obligations." (Id.).

Defendants continued to operate the Paradise Road restaurant as a Ruth's Chris Steak House restaurant, and Plaintiff filed this lawsuit on March 26, 2010, (Compl., Doc. 1). On June 24, 2010, Plaintiff filed a Motion for Preliminary Injunction (Doc. 9), and a hearing was scheduled thereon, (see Doc. 11). However, on July 26, 2010—the day before the scheduled hearing—both Defendants filed Chapter 11 bankruptcy petitions in Nevada. (See Docs. 15 & 16). Thus, these proceedings had to cease due to the automatic stay under 11 U.S.C. § 362(a), and this case was immediately stayed and administratively closed. (Order, Doc. 14).

On February 24, 2011, Plaintiff filed notice that the bankruptcy court had entered orders lifting the stay in both Defendants' bankruptcy cases for the limited purpose of allowing this Court to determine whether the Paradise Road franchise agreement was validly terminated. (Doc. 17 & Attachs. thereto). Plaintiff filed its Motion for Partial Summary Judgment (Doc. 18) that same day. The case was reopened and Defendants were ordered

to respond to the summary judgment motion. (Doc. 20). Defendants have done so,[2] (Resp., Doc. 22), and the motion for summary judgment as to Count One of the Complaint is now ripe. In that count, Plaintiff seeks a declaratory judgment that the Paradise Road franchise agreement has validly terminated in accordance with its terms.

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52

---

[2]Defendants also filed a motion to dismiss for lack of jurisdiction (Doc. 21). That motion has been denied by separate Order. (Doc. 28).

(1986)).

### III. Discussion

In its motion, Plaintiff seeks a declaration that the Paradise Road franchise agreement was validly terminated. In their Response, Defendants do not dispute the facts recounted herein but argue that Plaintiff's motion should be denied because Plaintiff's "statements and conduct after its purported termination of the Paradise Road franchise agreement amount to waiver." (Doc. 22 at 7). This argument is without merit.

Defendants rely on the correspondence between the parties after the Termination Notice was sent in September 2009 as evidence of "waiver of termination" by Plaintiff, but that correspondence does not support a finding of waiver. Instead, it reflects efforts by the parties to work out an arrangement whereby Defendants could continue to operate the restaurant—efforts that never resulted in an agreement. Plaintiff did state after termination that it would agree to forbear enforcement of Defendants' termination obligations if certain points were agreed to, but no agreement between the parties ever was made. Instead, over the course of the next several months, the parties exchanged proposals.

Defendants contend that Plaintiff continued to treat them as "legitimate franchisees" even after the September 2009 termination notice. Defendants note that Plaintiff continued to send them corporate communications regarding recipes, customer service, and other franchise operation matters. (See Taylor Decl. ¶ 13). Plaintiff also continued to list the Paradise Road restaurant on its website and to accept reservations for it through that website. (Id. ¶ 14). Additionally, it is undisputed that Plaintiff accepted royalty payments that Defendants made from October 2009 through February 2009.

However, this conduct by Plaintiff does not amount to waiver as a matter of law. As Defendants correctly note, "[w]aiver occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Emery v. Progressive Cas. Ins. Co., 49 So. 3d 17, 21 (La. Ct. App. 2010),[3] cited in Defs.' Resp. at 7. The actions of Plaintiff do not support a finding of an intentional relinquishment. Other courts have recognized that franchisors do not waive their right to enforce or terminate a franchise agreement by engaging in such actions. See Burger King Corp. v. Lee, 766 F. Supp. 1149, 1156 (S.D. Fla. 1991) (finding that franchisor's decision to allow its distributors to continue to provide franchisee with brand's food products even after termination was "not a waiver of its termination of the franchise agreement"); cf. Dunkin' Donuts Franchised Rests., LLC v. Cardillo Capital, Inc., 551 F. Supp. 2d 1333, 1337 (M.D. Fla. 2008) (finding that continued acceptance of fees by franchisor did not amount to waiver of rights under franchise agreement).

Moreover, Plaintiff's actions do not support a reasonable belief as to relinquishment. Defendants claim that they reasonably relied on Plaintiff's conduct in making improvements to the restaurant at their own expense, and they assert they would not have done so if they had believed that the franchise was terminated. However, Defendants have not presented evidence to support a conclusion that a belief that the franchise was not terminated was

---

[3]The Paradise Road Franchise Agreement contained a Louisiana choice-of-law provision. Louisiana law regarding waiver appears to be in accord with the law of Florida and other states in any event.

reasonable.

In their Response memorandum, Defendants themselves characterize the parties' post-termination dealings as attempts to reach a new agreement. (See Resp. at 9 (referring to Plaintiff's "express agreement to for[b]ear its enforcement of the termination and subsequent conduct in continuing to negotiate with the defendants" and Plaintiff's "representation that it would not enforce the termination so that the parties could negotiate an agreement which would allow for Defendants' continued operation of the franchise"). Such conduct does not, however, amount to a "waiver of termination"; instead, at most it was a temporary forbearance of enforcement of termination obligations. Forbearance of enforcement of termination provisions and obligations is not the equivalent of "waiver of termination."

Obviously, it was in the interest of both sides to keep the restaurant running while an agreement could potentially be worked out. The fact that Plaintiff allowed the continued operation of the restaurant during the negotiation period does not negate the termination or preclude Plaintiff from enforcing the termination that had already occurred. Moreover, the franchise agreement contained a Non-Waiver provision in which the parties agreed that failure by Plaintiff to demand strict compliance would not constitute a waiver of Plaintiff's rights. (Franchise Agreement ¶ 15.07). Such clauses have been found valid and enforceable. See Burger King, 766 F. Supp. at 1156 (noting, in addition to finding that conduct did not amount to waiver, that franchise agreement contained an enforceable non-waiver clause); Dunkin' Donuts, 551 F. Supp. 2d at 1337 (same). Romania Rumania

In sum, Defendants' waiver argument fails, and Plaintiff is entitled to summary

-9-

judgment on Count One of its Complaint. The Paradise Road franchise agreement was validly terminated.

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Partial Summary Judgment (Doc. 18) filed by Plaintiff is **GRANTED**. This Order does not close the file.

2. **On or before Friday, October 21, 2011**, counsel for the parties shall advise the Court in a joint filing of three (3) or fewer pages as to whether this case should again be administratively closed due to Defendants' bankruptcy.

**DONE** and **ORDERED** in Orlando, Florida this 12th day of October, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record